USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                    :
UNITED STATES OF AMERICA,            :
                                                    :
                        -v -                            :             1:19-cr-435-GHW
                                                    :
JUAN OSVALDO GUZMAN,               :        MEMORANDUM OPINION &
                                                    :                        ORDER
                                      Defendant.   :
                                                    :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Defendant Juan Osvaldo Guzman was deported from the United States in 2003. At the time, he was a felon twice over, having been convicted in New York State court both for the illegal possession of a firearm and the distribution of cocaine. At his deportation hearing, the immigration judge ordered that Mr. Guzman be deported because of his firearms conviction. The immigration judge also observed that Mr. Guzman's cocaine conviction would independently mandate his removal. Mr. Guzman now argues that the removal order was invalid because his two state criminal convictions did not mandate his removal under federal immigration law. Mr. Guzman's arguments are correct: Because the state offenses for which he was convicted are categorically broader than the federal offenses that mandate deportation under federal immigration law, the removal order underpinning the illegal reentry charge in this case is fundamentally unfair. And as a result, the immigration judge's advice that Mr. Guzman was not eligible for voluntary departure rather than mandatory deportation, was erroneous. Accordingly, Mr. Guzman's motion to dismiss the indictment is GRANTED.

## II.     FACTS

### A.  Mr. Guzman's Status and Removal Proceedings

Mr. Guzman is a citizen of the Dominican Republic.  He immigrated to the United States on April 9, 1986.  He does not have legal status in the United States.  On January 15, 1998, Mr. Guzman pleaded guilty to one charge of criminal possession of a weapon in the third degree, in violation of N.Y. Penal L. § 265.02(4), a Class D felony.  Declaration of S. Isaac Wheeler, Dkt. No. 24 ("Wheeler Decl."), ¶ 6.  The weapon that he possessed was a firearm.  He was sentenced to five years of probation.  *Id.*  On April 19, 2001, Mr. Guzman pleaded guilty to three counts of criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal L. § 220.39, a Class B felony.  *Id.* ¶ 7.  He was sentenced to an indeterminate term of six to twelve years imprisonment followed by five years of post-release supervision.  *Id.*

On August 9, 2001, Mr. Guzman received a notice to appear ("NOA"), which is similar to a criminal complaint or indictment.  Dkt. No. 24-2, Ex. F.  The NOA notified Mr. Guzman that he was subject to removal from the United States.  *Id.*  The NOA cited his firearm conviction as the charge supporting removal, pursuant to § 237(a)(2)(C) of the Immigration and Nationality Act ("INA").  *Id.*  The notice did not mention Mr. Guzman's drug conviction.  *Id.*

On September 14, 2001, Mr. Guzman appeared for a removal hearing before Immigration Judge ("IJ") Joe Miller.  Wheeler Decl.  ¶¶ 9-10.  The hearing was conducted with the assistance of a Spanish translator.  Judge Miller engaged in an individual colloquy with Mr. Guzman.  He began by first advising Mr. Guzman of a number of his basic rights, including his right to retain counsel, and the right to appeal his decision.  Dkt. No. 24-2, Ex. G.  Mr. Guzman told Judge Miller that he was born in the Dominican Republic and that he was not a citizen of the United States.  *Id.* at 3:55-4:10.  He confirmed that the factual allegations in the NOA were true.  *Id.* at 3:39-05:11.  At the time, Mr. Guzman was still serving his sentence for the drug conviction.  *Id.*  Based on the individual colloquy

and the NOA, Judge Miller found Mr. Guzman removable as a result of the charge presented in the NOA—Mr. Guzman's conviction for possession of a firearm. *Id.* at 5:36-5:40.

Judge Miller then stated "Now Mr. Guzman, I don't see any legal way that you can, uh, stay here because of your drug conviction even though it's not been charged against you." *Id.* at 5:48-5:58. Judge Miller reiterated Mr. Guzman's right to appeal three times during the hearing. *Id.* at 00:40-00:43, 3:22-3:30, 6:25-6:30. Each time, Mr. Guzman confirmed that he understood that he had the right to appeal the decision and that he wanted to waive his right to appeal. *Id.* Despite advising him regarding a number of his rights, Judge Miller did not advise Mr. Guzman of his right to apply for so-called "voluntary departure." As described further below, voluntary departure, among other benefits, permits an alien to avoid future prosecution for illegal reentry.

Judge Miller then ordered that Mr. Guzman be deported and asked if Mr. Guzman wanted to be deported to the Dominican Republic. *Id.* at 6:04-6:14. Mr. Guzman affirmed that he did. *Id.* at 6:14-6:16. Judge Miller then asked Mr. Guzman if he wanted "to appeal or make this final today." *Id.* at 6:25-6:30. Mr. Guzman responded that, "I want to make it final today." *Id.* at 6:25-6:36.

Based on Mr. Guzman's responses, Judge Miller issued a removal order (the "Removal Order") on the day of the hearing. Dkt. No. 24-2, Ex. H. The Removal Order states that Mr. Guzman was ordered removed because of the charge "contained in the Notice to Appear," namely the firearm conviction. *Id.* It also states that Mr. Guzman had waived his right to appeal. *Id.* The Removal Order contains the pre-printed statement that "[r]espondent has made no application for relief from removal.*" Id.* Judge Miller crossed that out and manually replaced it with the following: "[r]espondent is not eligible for relief from removal." *Id.* This is consistent with Judge Miller's guidance during the removal proceeding that he did not believe Mr. Guzman was eligible for relief from removal based on his convictions. Mr. Guzman was removed to the Dominican Republic on September 29, 2003. Dkt. No. 24-2, Ex. I.

3

Mr. Guzman accepted Judge Miller's decision but did not accept its result. After Mr. Guzman was removed from the United States, he returned without the express consent of the Attorney General of the United States, or the Secretary of the Department of Homeland Security, to reapply for admission to the United States. Dkt. No. 1; Dkt. No. 24-1, Ex. D.

### B. Mr. Guzman's Arrest

Mr. Guzman was arrested by the New York Police Department (the "NYPD") in the Bronx on February 13, 2019 for possession of a controlled substance. Dkt. No. 1. Because of this arrest, officers from the Department of Homeland Security were notified that Mr. Guzman had illegally reentered the United States and obtained a warrant for his arrest. Mr. Guzman was arrested pursuant to the federal warrant on May 11, 2022.

### C. Procedural History

Mr. Guzman first appeared before Magistrate Judge Katharine H. Parker on May 11, 2022. Dkt. No. 4. Mr. Guzman was released on bail. Dkt. No. 5. The grand jury handed down the indictment in this case on June 12, 2019, charging Mr. Guzman with illegal reentry in violation of Title 8, United States Code, Section 1326(a) and (b)(2). Dkt. No. 8. Mr. Guzman filed this motion to dismiss the indictment on September 12, 2022. Dkt. No. 22. Mr. Guzman argues that his removal was not mandatory for several reasons. Mr. Guzman argues that he was eligible for voluntary departure because the state firearm statute charged in the NOA is categorically broader than the operative federal definition of a deportable "firearms" offense. Mr. Guzman also contends that Judge Miller's erroneous advice misled him into believing he was subject to mandatory removal.

In support of his motion, Mr. Guzman submitted an affidavit. Declaration of Juan Osvaldo Guzman, Dkt. No. 24-1, Ex. A ("Guzman Decl."). In his declaration, Mr. Guzman stated that he did not know that the immigration judge did not have the authority to deport him based on his firearm and drug convictions. *Id.* ¶ 10. He also asserted that he "believed deportation was the only

4

possible outcome and the immigration judge said there was no way for me to avoid deportation at the hearing" and that he "would have fought . . . as long as necessary if I knew I had any chance to stay." *Id.* ¶¶ 10-12. He explained that when "I accepted the deportation order and waived the appeal, I did it because I did not believe I had another alternative." *Id.* ¶ 14.

The United States filed its opposition to the motion on October 3, 2022. Dkt. No. 29 (the "Opposition"). The government concedes that Mr. Guzman was not removeable based on the firearm conviction charged in the Removal Order because the state firearm statute is categorically broader than the operative federal definition of a deportable "firearms" offense. But the government argues that Mr. Guzman was not prejudiced because his separate state conviction for a narcotics offense would have required his mandatory deportation in any event. The government also argues that Mr. Guzman cannot rely on *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) to excuse his failure to comply with the requirement that he exhaust his administrative remedies under 8 U.S.C. § 1326(d)(1) because *Sosa* was abrogated by *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021). Mr. Guzman filed his reply a week later, on October 12, 2022. Dkt. No. 31 (the "Reply").

### III.    ANALYSIS

#### A.  Challenges to A Deportation Order Pursuant to 8 U.S.C. § 1326(a)

A defendant may move to dismiss an indictment due to a defect, such as failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Under 8 U.S.C. § 1326(a), it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States. A defendant may attack an illegal reentry charge by collaterally challenging the validity of the underlying removal order upon which the charge is predicated. *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004). Congress articulated the circumstances in which an alien can do so in Section 1326(d) of the statute, which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien

5

demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

The plain text of the statutory language makes clear that these "requirements are conjunctive" — a defendant must satisfy all three requirements to succeed in his challenge to a removal order. *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). Because the analysis of the first two requirements of the statute are informed by its analysis of the third, the Court begins with an analysis of whether Mr. Guzman's removal order was fundamentally unfair.

### B. Mr. Guzman's Removal Order was Marred By a Fundamental Procedural Error

Mr. Guzman's removal order was marred by a fundamental procedural error because, as the government concedes, the state statute charged in the NOA that supported the removal order was categorically broader than the operative federal definition of a deportable "firearms" offense.

"To show fundamental unfairness [under Section 1326(d)(3)], a defendant must show both a fundamental procedural error and prejudice resulting from that error. In short, in order to demonstrate prejudice an alien must show that his proceeding contained errors so fundamental that he might have been deported in error." *Copeland*, 376 F.3d at 70 (internal quotations and citations omitted) (alteration in original). "The alien bears the burden of showing that entry of the removal order was fundamentally unfair." *United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012).

To fully comprehend why this removal order was fundamentally unfair, a brief overview of the INA as it pertains to voluntary departure will be useful. The Attorney General has discretion to permit an eligible noncitizen "voluntarily to depart the United States at the [noncitizen's] expense . .

6

. , in lieu of being subject to proceedings under 8 U.S.C. § 1229(a) [namely, a removal proceeding] or prior to the completion of such proceedings." 8 U.S.C. § 1229(c)(a)(1). Voluntary departure is a form of discretionary relief that allows an alien to depart the country voluntarily. This form of relief extends many other benefits to aliens. In particular, it precludes a future prosecution for illegal reentry since a prior removal order is a necessary precondition to a violation of Title 8, U.S.C. § 1326(a). In other words, if Mr. Guzman had been granted voluntary departure rather than been ordered removed by the IJ, the government would not have been able to bring an illegal reentry charge against him.

Pursuant to Title 8, U.S.C. § 1227(a), an alien *must* be deported if he falls under the classes of deportable aliens enumerated under the statute. Those aliens are not eligible for voluntary departure. One class of aliens that is subject to mandatory removal are aliens who have been convicted of what the statute defines as an "aggravated felony," which includes convictions for controlled substances and firearms offenses. 8 U.S.C. § 1227(a)(2)(A)(iii)(B), (C). In assessing whether a state conviction qualifies as an "aggravated felony" under the INA, courts have routinely applied the "categorical approach." *Mellouli v. Lynch*, 575 U.S. 798, 806, 135 S. Ct. 1980, 1987, 192 L. Ed. 2d 60 (2015). "If the state statute criminalizes conduct that the federal offense does not, the two are not categorical matches and a conviction under the state statute cannot serve as a predicate for removal under the INA." *Williams v. Barr*, 960 F.3d 68, 72 (2d Cir. 2020).

The charge in the NOA stated that Mr. Guzman was removable as a noncitizen convicted "under an[y] law of . . . possessing . . . a firearm or destructive device, as defined in Section 921(a) of title 18, United States Code," pursuant to 8 U.S.C. § 1227(a)(2)(C). Dkt. No. 24-2, Ex. F. In *Jack v. Barr*, 966 F.3d 95 (2d Cir. 2020), the Second Circuit found the New York State firearm statute, that was the basis for Mr. Guzman's conviction, was categorically broader than its federal counterpart because the federal definition excluded "antique" firearms, whereas the state statute criminalizes

7

conduct involving antique firearms. *Jack v. Barr,* 966 F.3d 95, 98 (2d Cir. 2020). The state statute under which Mr. Guzman was convicted is categorically broader than the operative federal definition of a deportable "firearms" offense. The government concedes this point, as it must. Accordingly, Mr. Guzman was not subject to mandatory removal on the basis provided in the NOA and the Removal Order. This was a fundamental procedural error.

### C. Prejudice

Mr. Guzman has presented sufficient evidence for the Court to conclude that he suffered prejudice. "Prejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.'" *United States v. Copeland,* 376 F.3d 61, 73 (2d Cir. 2004) (quoting *United States v. Fernandez-Antonia,* 278 F.3d 150, 159 (2d Cir. 2002)). The Second Circuit in *Copeland* made clear that an immigration judge's errors could support a finding of prejudice: "prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted" relief. *Id.* at 73.

Judge Miller's error in issuing a removal order based on the firearm charge was a defect that resulted in a deportation that would not have otherwise occurred. Mr. Guzman was further prejudiced by another fundamental procedural error: Judge Miller's erroneous statement that Mr. Guzman's drug conviction made him subject to mandatory removal. That statement was incorrect because the state statute's definition of cocaine is categorically broader than its federal counterpart. *See, e.g., United States v. Moncrieffe,* 167 F. Supp. 3d 383, 414 (E.D.N.Y. 2016) (holding that the defendant was prejudiced by the fundamental error of the immigration judge because the judge's conclusion that defendant was deportable "was based on a misapplication of the required categorical approach . . . and his immigration proceedings should have been terminated in his favor"); *United States v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *12 (S.D.N.Y. Jan. 31, 2022)

(noting that a defendant is eligible for voluntary departure pursuant to 8 U.S.C. § 1229(a) if the record reflects that the defendant was not convicted of an aggravated felony under the INA).

Under 8 U.S.C. § 1101(a)(43)(B), the term "aggravated felony" is defined as "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18." 8 U.S.C. § 1101(a)(43)(B). Mr. Guzman was convicted of criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal L. § 220.39. Wheeler Decl. ¶ 7. N.Y. Penal L. § 220.39 provides, in relevant part, that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . . a narcotic drug." N.Y. Penal L. § 220.39(1). A "narcotic drug" is defined in turn as "any controlled substance listed in schedule I(b), I(c), II(b) or II(c) other than methadone." N.Y. Penal L. § 220.00(7). Section II(b) of the New York statute, in turn, defines "cocaine" and related substances as:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances including cocaine and ecgonine, their salts, isomers, and salts of isomers, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

N.Y. Pub. Health Law § 3306, Schedule II(b)(4).

By contrast, Schedule II of the federal Controlled Substances Act (the "CSA") defines cocaine as:

> Coca leaves . . . and any salt, compound, derivative or preparation of coca leaves (including cocaine . . . and ecgonine . . . and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

21 C.F.R. § 1308.12(b)(4).

The federal regulations expressly limited the reach of the CSA to "optical or geometric

9

isomers" of cocaine, even though there are multiple types of isomers covered by other federal regulations, such as positional isomers. 21 C.F.R. § 1308.12(b)(4); 21 C.F.R. § 1300.01(b). The New York definition, in contrast, does not limit the type of isomers that fall within its definition of cocaine. Rather, by its terms, New York's definition of cocaine covers isomers of cocaine other than optical and geometric isomers, including positional isomers and other isomers. This plain textual reading of the relevant federal regulations compels the conclusion that New York's definition of cocaine, without limitation to particular types of isomers, is categorically broader than the federal definition. Accordingly, this state statute could not serve as a predicate for removal under the INA.

Judge Cronan presented a thoughtful and comprehensive analysis of this issue in *United States v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *1 (S.D.N.Y. Jan. 31, 2022). The Court adopts the reasoning presented in *Gutierrez-Campos*, which is consistent with several other recent district cases in this Circuit. *See, e.g., United States v. Holmes*, No. 21-CR-147 (NGG), 2022 WL 1036631, at *8 (E.D.N.Y. Apr. 6, 2022) (concluding in an illegal reentry matter that the New York statute criminalizes isomers of cocaine that the Controlled Substances Act does not); *United States v. Fernandez-Taveras*, 511 F. Supp. 3d 367, 369 (E.D.N.Y. 2021), *appeal withdrawn sub nom. United States v. Taveras*, No. 21-155, 2021 WL 1664107 (2d Cir. Apr. 5, 2021) (same).

### D.  Mr. Guzman's Failure to Exhaust his Administrative Remedies is Excused

Pursuant to 8 U.S.C. § 1326(d)(1), Mr. Guzman must also show that he "exhausted any administrative remedies that may have been available to seek relief against the order." It is undisputed that Mr. Guzman did not appeal Judge Miller's decision. Nevertheless, in this Circuit, "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004). In *Sosa*, the Second Circuit held that a defendant is excused from complying with the mandatory statutory exhaustion requirement under 8 U.S.C. § 1326(d)(1) if the waiver was not

10

knowing and intelligent. In reaching this holding, *Sosa* evaluated whether an immigration judge's failure to inform a defendant of relief from mandatory removal violated the Constitution's guaranty of due process. *Id. Sosa* reasoned that while the requirements pursuant to 8 U.S.C. § 1326(d) were mandatory as a statutory matter, due process required that the Court excuse the exhaustion requirement when an alien's waiver of his right to appeal was not knowing and intelligent. *Id.*

Mr. Guzman is excused from complying with 8 U.S.C. § 1326(d)(1) because Judge Miller misled Mr. Guzman to believe that no relief was available by telling him incorrectly that he was subject to mandatory removal. This caused Mr. Guzman's waiver to be invalid. The determination of whether a waiver is knowing and intelligent is inevitably a "fact-specific inquiry." *Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008). Judge Miller's statement that "I don't see any legal way that you can, uh, stay here because of your drug conviction even though it's not been charged against you," misled Mr. Guzman into believing that he was subject to mandatory removal. Indeed, Mr. Guzman averred that, "I accepted the deportation order and waived the appeal, I did it because I did not believe I had another alternative." Guzman Decl., ¶ 14. Judge Miller's misleading statement that led Mr. Guzman to believe he was not eligible for voluntary departure rendered Mr. Guzman's waiver of his right to appeal not knowing and intelligent. *See, e.g., Copeland*, 376 F.3d at 71 ("[A]n IJ that misleads an alien into believing that no relief exists falls into a different category because of the special duties of an IJ to aliens . . . our removal system relies on IJ's to explain the law accurately to *pro se* aliens . . . [o]therwise, such aliens . . . would be practically foreclosed from making a case against removal.")

The government's argument that *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021) abrogated *United States v. Sosa* is unpersuasive. Judge Cronan thoughtfully reasoned in *Gutierrez-Campos* that *Sosa* remains binding authority in this Circuit because *Palomar-Santiago*'s holding "was limited to statutory construction and did not address the constitutional concerns implicated in *Sosa*

11

and other Second Circuit cases." *Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *19 (S.D.N.Y. Jan. 31, 2022). This Court has reviewed Judge Cronan's thoughtful decision and adopts its reasoning and conclusion that *Sosa* remains binding law in this Circuit.[1]

### E. Mr. Guzman was Deprived of the Opportunity for Judicial Review

Pursuant to 8 U.S.C. § 1326(d)(2), Mr. Guzman must also show that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." Mr. Guzman has shown that he was deprived of his opportunity for judicial review under U.S.C. § 1326(d)(2) because his waiver was not knowing and intelligent. *See, e.g., Copeland*, 376 F.3d at 68 n.6 ("Where waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review"); *Sosa*, 387 F.3d at 136 ("[A]n invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid.")

Even when a defendant realistically has time to seek judicial review between a final order of deportation and deportation, such as through filing a writ for *habeas corpus*, a defendant is deprived of the opportunity for judicial review when an immigration judge misleads a defendant into believing there is no opportunity for relief from removal. *United States v. Lopez*, 445 F.3d 90, 93 (2d Cir. 2006). In *Lopez*, the court reasoned that the defendant established that he had been deprived of the opportunity for judicial review because even though he had eighteen months between his final order of deportation and deportation to seek judicial review, the immigration judge's misleading advice deterred the defendant from seeking any legal remedies. *Id.* at 98. Similarly, Mr. Guzman has established that he was deprived of the opportunity for judicial review because, even though twenty-

---

[1] Moreover, because *Palomar-Santiago* did not expressly abrogate *Sosa*, this Court is bound by *Sosa* until such time that it is revisited by the Second Circuit or the Supreme Court. *United States v. Peguero,* 34 F.4th 143, 158–59 (2d Cir. 2022). It is not the job of a district court to overrule decisions by its court of appeals.

four months between his final order of deportation and deportation elapsed, Judge Miller's errant remark misled him into believing that he had no legal remedy.

## IV. CONCLUSION

Mr. Guzman is indisputably an illegal alien who has been convicted of multiple felonies: the Court is not ruling here that he should remain at liberty in this country. However, it is also indisputable that the basis for the order for his removal that underpins this prosecution was wrong. The immigration judge's errant musings about the effect of Mr. Guzman's cocaine conviction prejudiced Mr. Guzman by misleading him to the belief that he was subject to mandatory removal. Because the removal order that supports this indictment is "fundamentally unfair," Mr. Guzman's motion to dismiss the indictment is GRANTED.

SO ORDERED.

Dated: November 17, 2022  
New York, New York

GREGORY H. WOODS  
United States District Judge